UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT JARMEL ANDERSON,

      Petitioner,

                                        CASE NO. 2:08-CV-10515

   v.                           CHIEF JUDGE GERALD E. ROSEN
                                      MAGISTRATE JUDGE PAUL J. KOMIVES

MARY K. BERGHUIS,

      Respondent.

_____/


## REPORT AND RECOMMENDATION

I.     RECOMMENDATION ................................................................. 2
II.    REPORT ................................................................................. 2
    A.    *Procedural History* ....................................................... 2
    B.    *Factual Background Underlying Petitioner's Conviction* .................. 5
    C.    *Procedural Default* ....................................................... 7
    D.    *Standard of Review* ....................................................... 8
    E.    *Evidentiary Claims (Claims I, IV, & VI)* ................................ 10
        1.    *Clearly Established Law* ........................................ 10
        2.    *Bad Acts Evidence (Claims I & IV)* ............................... 11
        3.    *911 Tapes (Claim VI)* ............................................ 13
    F.    *Prosecutorial Misconduct (Claim V)* ..................................... 15
        1.    *Clearly Established Law* ........................................ 15
        2.    *Analysis* ......................................................... 16
    G.    *Conviction of Assault on Transferred Intent Theory (Claim X)* .......... 17
        1.    *Sufficiency of the Evidence* ..................................... 18
            a. Clearly Established Law ....................................... 18
            b. Analysis ...................................................... 19
        2.    *Double Jeopardy* ................................................. 21
            a. Clearly Established Law ....................................... 21
            b. Analysis ...................................................... 22
    H.    *Counsel Claims (Claims II-III & VII-IX)* ............................... 24
        1.    *Substitute Counsel (Claim VII)* ................................. 24
            a. Clearly Established Law ....................................... 24
            b. Analysis ...................................................... 26
        2.    *Ineffective Assistance of Trial Counsel (Claims II-III & VIII)* ... 28
            a. Clearly Established Law ....................................... 29
            b. Failure to Call Witnesses ..................................... 30
            c. Failure to Object ............................................. 33
        3.    *Ineffective Assistance of Appellate Counsel (Claim IX)* .......... 34
    I.    *Cumulative Error (Claim XI)* ........................................... 37
    J.    *Conclusion* ............................................................. 38
III.   NOTICE TO PARTIES REGARDING OBJECTIONS ................................... 38

I.       RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.      REPORT:

A.       *Procedural History*

1.       Petitioner Robert Jarmel Anderson is a state prisoner, currently confined at the Brooks Correctional Facility in Muskegon Heights, Michigan.

2.       On October 9, 2003, petitioner was convicted of two counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83; and one count of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.  On October 30, 2003, he was sentenced to concurrent terms of 33½-50 years' imprisonment on the assault convictions, and to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

3.       Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

     I.       APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL BY THE
ADMISSION OF OTHER ACT EVIDENCE.

     II.      APPELLANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS
TO THE EFFECTIVE ASSISTANCE OF COUNSEL AND A FAIR TRIAL
WERE VIOLATED WHERE, FOR THE NUMEROUS REASONS SET
FORTH BELOW, HE WAS PREJUDICED BY HIS LAWYER'S FAILURE
TO PERFORM AT AN OBJECTIVE STANDARD OF REASONABLE
COMPETENCE.  US CONST AM VI, XIV; MICH CONST ART I SEC 17,
20.

Petitioner also filed a supplemental *pro per* brief, raising the following additional claims:

     I.       WHETHER APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL
BY THE ADMISSION OF OTHER BAD ACT EVIDENCE.

II.    WHETHER APPELLANT WAS DENIED A FAIR TRIAL BY THE PROSECUTOR'S COMMENTS ON HIS NOTICE OF ALIBI AND ABSENCE OF WITNESSES LISTED THEREON.

III.   WHETHER APPELLANT WAS DENIED A FAIR TRIAL WHEN ONLY PORTIONS OF 911 RECORDINGS WERE PLAYED DURING TRIAL.

IV.    WHETHER APPELLANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHERE TRIAL COUNSEL FAILED TO OBJECT AND SEEK CAUTIONARY INSTRUCTIONS.

V.     WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT SUBSTITUTION OF TRIAL COUNSEL.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Anderson*, No. 252308, 2005 WL 1048500 (Mich. Ct. App. May 5, 2005) (per curiam).

4.     Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court.  Petitioner raised an additional claim asserting that appellate counsel rendered constitutionally ineffective assistance.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Anderson*, 474 Mich. 939, 706 N.W.2d 16 (2005).

5.     On August 30, 2006, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I.     DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE HIS ATTORNEY FAILED TO INVESTIGATE, MOVE FOR THE PRODUCTION OF, OR SUBPOENA WITNESSES WHO COULD SUPPORT HIS MISIDENTIFICATION DEFENSE.

(A)    COUNSEL FAILED TO CALL OR INTERVIEW A KNOWN DEFENSE WITNESS WITH EXCULPATORY INFORMATION.

(B)    COUNSEL FAILED TO INVESTIGATE OR MOVE FOR THE PRODUCTION OF AN INDORSED PROSECUTION WITNESS WHO WAS A POSSIBLE RES GESTAE WITNESS.

II.    APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF

3

APPELLATE COUNSEL ON HIS FIRST APPEAL BY RIGHT.

    (A)    BY COUNSEL FAILING TO FILE IN THE LOWER COURT FOR A NEW TRIAL OR EVIDENTIARY HEARING ON THE INEFFECTIVE TRIAL COUNSEL CLAIMS, AFTER RAISING THE ISSUE IN APPELLANT'S BRIEF.

    (B)    BY FAILING TO PROVIDE CLERICAL AND FILING ASSISTANCE OF ADDITIONAL ISSUES DEFENDANT PURSUE [sic] TO FILE ON APPEAL, EACH OF WHICH HAD MERIT.

III.    APPELLANT COULD NOT BE CONVICTED OF ASSAULT WITH INTENT TO MURDER DAWNA BECK BASED ON TRANSFERRED INTENT THEORY BECAUSE HE WAS ALREADY AGREED TO A FINDING OF GUILT BY THE JURY AS TO THE VICTIM ANDRE JOHNSON BASED ON THE SAME INTENDED ASSAULT.

IV.    DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY THE CUMULATIVE EFFECT OF ERRORS COMMITTED DURING THE COURSE OF TRIAL.

On February 22, 2007, the trial court denied petitioner's motion for relief from judgment, concluding that petitioner's claims were either raised and decided on direct appeal and therefore barred by MICH. CT. R. 6.508(D)(2), or that the claims could have been raised on direct appeal and petitioner lacked good cause for his failure to do so and therefore the claims were barred by MICH. CT. R. 6.508(D)(3). *See People v. Anderson*, No. 03-7705 (3d Judicial Cir. Ct., Mich., Feb. 22, 2007). The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Anderson*, 480 Mich. 955, 741 N.W.2d 364 (2007); *People v. Anderson*, No. 277630 (Mich. Ct. App. July 25, 2007).

    6.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on . As grounds for the writ of habeas corpus, he raises the eleven claims that he raised in the state courts on direct appeal and collateral review.

7.     Respondent filed his answer on August 13, 2008.  She contends that petitioner's eighth through eleventh claims are barred by petitioner's procedural default in the state courts, and that petitioner's remaining claims are without merit or not cognizable on habeas review.

8.     Petitioner filed a reply to respondent's answer on September 8, 2008.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from the May 10, 2003, shootings of Andre Johnson and Dawna Beck.  The evidence adduced at trial was accurately summarized by the Michigan Court of Appeals:

Anderson's convictions arise out of a shooting incident that occurred in Detroit on May 10, 2003. That day, Antoine Beck was driving his mother, Dawna Avery Beck, down Grand River Avenue between I-96 and Wyoming when Dawna Beck was struck in the cheek by a bullet. Both Dawna and Antoine Beck heard gunshots, but did not see the shooter. Dawna and Antoine Beck drove to a nearby police precinct, where EMS was called.

The second shooting victim was Andre Johnson, a tow truck driver. On May 10, 2003, Johnson was driving a tow truck to pick up his personal vehicle from Hollywood Sam's Auto Parts, which is located on Grand River Avenue between Ilene and Griggs. Johnson stated that after loading his car onto the truck, he was standing in front of the shop talking with Melvin Howard, who had worked on his car. Johnson testified that as he opened the driver's side of his tow truck, he heard two gunshots, then saw Anderson running toward him while continuing to fire at him. Johnson attempted to run away, but was shot in his leg, hip, and back before falling to the ground. Johnson stated that he recalled then seeing Anderson get into a blue four-door Intrepid and drive away. Johnson called 911 and identified Anderson as the shooter.

Johnson explained that he recognized Anderson from an altercation they had outside a bar on January 2, 2003, after he saw Anderson "snatching and grabbing" his date, Latoya Brand. Johnson stated that he had pulled his tow truck around to where Anderson and Brand were standing and began to exchange words with Anderson, who was with four friends. Johnson recalled that Anderson spit at his truck, jumped on the truck, and swung open the passenger side door. Johnson responded by removing a sawed-off shotgun from underneath the driver's seat and shooting it into the air outside the driver's side window. Johnson testified that he then fired the gun in the air a second time because he believed that Anderson and his friends had begun surrounding the truck. As a result of the incident, Johnson pleaded guilty to felony-firearm and was free on bond awaiting his sentencing when he was

5

shot.

Regarding the May 10 shooting, Melvin Howard testified that he recalled hearing several gunshots when he and Johnson were standing near the tow truck. Howard stated that Johnson ran toward him holding his chest and stomach area and fell to the ground behind the truck where Howard was standing. Howard testified that Johnson attempted to tell him the identity of the shooter, but that he could not understand Johnson. Howard claimed that Johnson then started to run in the direction of the auto shop, when the shooter shot at Johnson several more times. Howard's best description of the shooter was that he was a black male. Howard recalled that Johnson fell to the sidewalk in front of the auto shop. Howard said that he called 911 from his cell phone and handed the phone to Johnson so he could identify the shooter to police. Sharon Hood testified that she was comforting Johnson in front of the auto shop shortly after he had been shot, and heard Johnson identify Anderson as the shooter.

Detroit Police Officer Alfred Thomas testified that he was working in the 10th Precinct on May 10, 2003, when Dawna Beck arrived in distress because she had been shot. Officer Thomas spoke with the Becks and examined their vehicle, then went to the hospital to interview Johnson. Officer Thomas testified that Johnson identified Anderson as the shooter during this interview. Officer Thomas stated that he believed Johnson was shot while near the same cross streets Dawna and Antoine Beck were traveling when Dawna Beck was shot. Officer Thomas further testified that he knew that Anderson frequented a residence located two blocks from Hollywood Sam's. Officers Cyril Davis and Greg Tourville also investigated the shooting, and each testified that Johnson told them, separately, that Anderson was the shooter. Anderson was arrested in June 2003 after a police investigator saw him enter a Dodge Intrepid.

Anderson's sister, Patricia Anderson, and an investigator located a witness named Mark Jordan and convinced him to testify at trial. Jordan testified that he was riding in the front of a bus traveling near Hollywood Sam's on Grand River when he heard gunshots. Jordan recalled seeing a man with a rifle running in the street. Jordan described the shooter as a "little stocky dude." Jordan testified that Anderson was not the shooter.

Patricia Anderson testified that she and her brother were still in Florida on May 10, 2003 after having attended their grandfather's funeral in Pensacola on May 9, 2003. Patricia Anderson testified that she and her brother left Southfield, Michigan, on the evening of May 8 and drove 15 to 16 hours in a rental car to Florida, where they arrived on Friday, the morning of the funeral. Defense counsel introduced as evidence a "funeral itinerary" and a photograph allegedly showing Anderson at his grandfather's gravesite on the day of the funeral. Patricia Anderson recalled the she and Anderson did not drive back to Michigan until "Tuesday or Wednesday of that next week," which would have been May 13 or 14, 2003.

Patricia Anderson admitted that she owned a dark blue Dodge Intrepid at that time and that she had a home on Birwood Street, just two blocks from Grand River. Patricia Anderson conceded that she and her brother were not together "all the time"

while they were Florida. She could not produce any records, such as telephone records or credit card receipts, to establish that she and her brother were in Florida, although she did produce a rental car receipt matching the time period in question. Patricia Anderson testified that she could not persuade family members from Florida to testify at trial regarding Anderson's presence in Florida on May 10, 2003.

Anderson's cousin, Ronald Osborn, testified that he and his cousins drove a truck that followed the Andersons' rental car to Florida. Osborn stated that he attended the burial and is seen standing next to Anderson in the photograph taken at the gravesite. Osborn testified that Anderson was in Florida on May 10, 2003. Osborn stated that he left Florida on Sunday, May 11, 2003, and that Anderson remained in Florida. Osborn said that he next saw Anderson the following Thursday. Osborn admitted that he was once convicted of giving a false statement to a police officer. Osborn also testified that Anderson owned a blue Intrepid and resided on Birwood Street, near Grand River.

The prosecution argued to the jury that Anderson was the shooter who purposely shot Johnson in response to their previous altercation and that his stray bullet struck Dawna Beck. Anderson argued that this was a case of mistaken identity and that he was in Florida when the shooting occurred. The jury found Anderson guilty of two counts of assault with intent to murder and one count of felony-firearm.

*Anderson*, 2005 WL 1048500, at *1-*3, slip op. at 1-3.

C.    *Procedural Default*

Respondent first contends that petitioner's eighth through eleventh claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal. The Court should not resolve petitioner's claims on this basis, and should instead consider the merits of the claims. Even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits. Petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. Petitioner contends that his appellate counsel was ineffective for failing to raise these claims on direct appeal. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that

7

appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal.  *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).  Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted.  *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A

8

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Evidentiary Claims (Claims I, IV, & VI)*

Petitioner first contends that he was deprived of a fair trial by the trial court's erroneous evidentiary rulings. Specifically, he contends that the trial court erred in allowing evidence of other bad acts, and in failing to play all of the 911 tapes from the day of the shootings. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an

issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2.   *Bad Acts Evidence (Claims I & IV)*

Petitioner contends that he was denied a fair trial by the introduction of two instances of prior bad acts in violation of MICH. R. EVID. 404(b). First, Andre Johnson was permitted to testify regarding the prior fight between he and petitioner. *See* Trial Tr., dated 10/8/03, at 19-23. Second,

11

Officer Mark Mitchell testified concerning the circumstances of petitioner's arrest on an unrelated charge. Specifically, he testified regarding the place of arrest and the fact that petitioner was arrested after entering a maroon Dodge Intrepid, but did not testify regarding the basis for the arrest. *See* Trial Tr., dated 10/7/03, at 38-39. Petitioner contends that this testimony was not admitted for a proper purpose under Rule 404(b), was unduly prejudicial, and was not noticed by the prosecutor prior to trial as required by Rule 404(a)(2). The Court should conclude that petitioner is not entitled to habeas relief on this claim.

As noted above, the issue here is not whether this evidence was properly admitted under the Michigan Rules of Evidence, but rather whether petitioner was denied a fair trial by the introduction of this evidence. This being the case, petitioner is not entitled to habeas relief even if the evidence was not properly admitted under Rule 404(b). Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974). Here, both instances of prior conduct were relevant at trial. As the Michigan Court of Appeals observed, Johnson's testimony was relevant for a proper purpose under Rule 404(b)–namely to show motive and absence of mistake–because "the prosecution used this evidence to explain why Anderson would shoot Johnson and how Johnson could identify Anderson as the shooter." *Anderson*, 2005 WL 1048500, at *3, slip op. at 4. Further, Officer Mitchell's testimony was relevant because it showed petitioner driving a vehicle like the one identified by Johnson as the car in which petitioner was riding at the time of the shooting. Further,

12

Mitchell's testimony was not unduly prejudicial because Officer Mitchell did not provide any details of the crime for which petitioner was arrested; indeed, the natural import that the jury would likely have taken from Mitchell's testimony is that he was arrested in connection for the crime being prosecuted before the jury.  Thus, the prior acts testimony was relevant in petitioner's trial, and petitioner therefore cannot show that he was denied a fair trial by the introduction of the evidence.

Nor does the prosecutor's alleged failure to give pre-trial notice of this evidence as required by Rule 404(a)(2) provide a basis for habeas relief.  This claim likewise raises solely an issue of state law.  *See Richardson v. Evans*, 99 F. 3d 1150, 1996 WL 603278, * 3 (10th Cir. October 22, 1996); *Doss v. Bock*, No. 00-10030, 2002 WL 1554363, * 13 (E.D. Mich. July 15, 2002) (Lawson, J.) (prosecutor's alleged failure to give prior notice of intent to introduce evidence of defendant's and other witnesses' wrongful acts did not rise to level of a due process violation).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.     *911 Tapes (Claim VI)*

Petitioner also contends that he was denied a fair trial by the failure of the court to play for the jury a 911 call made by Carl Farmer, who did not testify at trial.  During the testimony of Dawna Beck and Melvin Howard, the court admitted tapes of the 911 calls made by those witnesses.  *See* Trial Tr., dated 10/6/03, at 111-12; 136-38.  During her testimony Sharon Hood, who was with Howard and Farmer at the time the shooting started, stated that in addition to Howard calling 911 Farmer also called 911 from his cell phone.  *See id*. at 155.  Hood did not testify as to anything regarding this 911 call other than the fact that it had been made.  All of the various 911 tapes were apparently admitted into evidence, but they were not all played for the jury.  After the jury had been instructed by the court and retired to deliberate, the parties and the court discussed the procedure

13

should the jury desire to listen to any of the tapes. The court ultimately ruled that, if the jury wanted to hear the 911 tapes they would be played in court, rather than in the jury room. *See* Trial Tr., dated 10/9/03, at 20-21. The jury returned its verdict without requesting to hear the 911 tapes. Petitioner contends that he was denied a fair trial by the trial court's failure to play these tapes for the jury. The Court should disagree, for several reasons.

First, there is no indication on the record that these tapes were unavailable to petitioner and his counsel. On the contrary, they were admitted into evidence, and thus petitioner could have sought to have the tapes played as part of his defense. He never sought to do so, nor did the trial court preclude him from doing so. Second, petitioner's contention that the failure to play these tapes violated the completeness rule, *see* MICH. R. EVID. 106, raises solely an issue of state law and, in any event, is misplaced. That rule provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." MICH. R. EVID. 106. This rule does not require in all cases that a complete document or recording be admitted, but rather only that it be so admitted when requested by the adverse party and when necessary to avoid unfairness or confusion. *See United States v. Branch*, 91 F.3d 699, 728 (5th Cir. 1996). "Rule 106 does not prohibit introduction of an incomplete [recording]. Instead, it allows the party against whom the document is introduced to place the remainder in evidence without additional evidentiary foundation. If [petitioner] wanted the remainder of the [recording] to be admitted, [he] should have offered it." *United States v. Phillips*, 543 F.3d 1197, 1203 (10th Cir. 2008) (citations omitted).

Finally, petitioner cannot show that he was denied a fair trial because he does not suggest,

14

and the record provides no basis to believe, that Farmer's 911 call would have in any way aided the defense. Farmer, like Howard and Hood, was a disinterested bystander, and there is no basis to doubt the prosecutor's representation, *see* Trial Tr., dated 10/9/03, at 20, that the call reflected nothing more than that a shooting had occurred, a fact which was not in dispute. For these reasons, the Court should conclude that petitioner is not entitled to habeas relief on this claim.[1]

F.      *Prosecutorial Misconduct (Claim V)*

Petitioner next contends that he was denied a fair trial by prosecutorial misconduct. Specifically, petitioner contends that the prosecutor improperly commented on his notice of alibi and the absence of witnesses listed on the notice. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally

---

[1]Although it would not provide a basis for habeas relief in any event, I note that petitioner is mistaken in asserting that the trial judge had ordered the tapes to be played for the jury. A review of the transcript shows not that the judge ordered the tapes to be played, but that if the jury wanted to hear the tapes they would be played in the courtroom, rather than simply given to the jury.

placed before the jury; and the strength of the competent proof to establish the guilt of the accused."
*Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted).
In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and
persistent that it permeates the entire atmosphere of the trial." *Id*. (internal quotation omitted).

2.    *Analysis*

During cross-examination of Patricia Anderson, petitioner's sister and alibi witness, the
prosecutor asked Anderson whether she had provided to defense counsel each of the names on the
alibi notice. She responded that she had done so. The prosecutor then asked whether the jury would
hear from any of these witnesses, and Anderson responded that it would not if it required the
witnesses to travel to Michigan from Florida. *See* Trial Tr., dated 10/8/03, at 100-02. On redirect
examination, Anderson testified that she had tried to get some of these witnesses to come to
Michigan to testify at trial, but that she was not able to do so. *See id*. at 106-07. During closing
argument, the prosecutor vigorously attacked petitioner's alibi defense, at one point arguing: "We
know there is other names on the alibi list, other people who can corroborate this. Where are they?"
*Id*. at 169. Defense counsel objected, and a sidebar discussion was held. The prosecutor did not
again reference the alibi notice, but continued in reference to Anderson's and Osborn's testimony
regarding the number of people at the funeral: "So you have between over a hundred and then forty
people attend this funeral. You got two people, older sister and cousin, and they can't keep their
stories straight. That's because Mr. Anderson was not down there." *Id*. Petitioner contends that
the prosecutor's references to his alibi notice and failure to call the witnesses listed on that notice
deprived him of a fair trial. The Court should disagree.

Regardless of whether the prosecutor should have explicitly referred to the notice of alibi in

questioning Anderson and making his closing argument, the prosecutor was free to challenge petitioner's failure to call any of the numerous people who Anderson and Osborn testified were at the funeral.  It is well established that "[o]nce a defendant comes forward with evidence, the prosecutor generally may comment on his failure to call an available witness who is under his control and whose testimony may be material." *Tankleff v. Senkowski*, 135 F.3d 235, 251 (2d Cir. 1998).  Thus, "[t]he prosecution is free to comment on the failure of the defendant to call an available alibi witness." *United States v. Griffin*, 437 F.3d 767, 769 (8th Cir. 2006) (internal quotation omitted); *see also*, *United States v. Ables*, 280 Fed. Appx. 513, 519-20 (6th Cir. 2008); *United States v. Ramirez*, 963 F.2d 693, 700 (5th Cir. 1992); *Bohan v. Kuhlmann*, 234 F. Supp. 2d 231, 270 (S.D.N.Y. 2002), *aff'd*, 66 Fed. Appx. 277 (2d Cir. 2003); *Duong v. McGrath*, No. C03-0127, 2003 WL 21838661, at *7 (N.D. Cal. July 31, 2003).  Thus, the prosecutor's questions and comments regarding the absent alibi witnesses were not improper, and petitioner is not entitled to habeas relief on this claim.

G.      *Conviction of Assault on Transferred Intent Theory (Claim X)*

Petitioner next contends that he was improperly convicted of assaulting with intent to murder Dawna Beck based on a transferred intent theory.  Petitioner argues that "[t]he doctrine of transferred intent should not have . . . allowed [petitioner] to be convicted of Assault with Intent to Murder Dawna Beck based on the theory that his intent to assault Andre Johnson transferred to Ms. Beck when appellant was convicted of Assault W/Intent to Murder based on the same intent to assault Andre Johnson."  Br. in Supp. of Pet., at 53-54.  Although petitioner appears to be asserting a sufficiency of the evidence claim with respect to the Beck assault, petitioner's formulation of his claim also suggests a double jeopardy claim.  In either event, the Court should conclude that

petitioner is not entitled to habeas relief on this claim.

    1.    *Sufficiency of the Evidence*

    *a.  Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992).  In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision.  Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how

18

a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Michigan law provides that "[a]ny person who shall assault another with intent to commit the crime of murder, shall be guilty of a felony[.]" MICH. COMP. LAWS § 750.83.  Under this provision, "the crime of assault with intent to commit murder requires proof of three elements: '(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.'" *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (quoting *People v. Plummer*, 229 Mich. App. 293, 581 N.W.2d 753, 759 (1998); *People v. Hoffman*, 225 Mich. App. 103, 570 N.W.2d 146, 150 (1997)).  As with other mental-state elements, intent to kill need not be proved by direct evidence, but rather may be proved by circumstantial evidence and reasonable inferences drawn from the evidence.  *See Warren*, 161 F.3d at 360; *Hoffman*, 225 Mich. App. at 111, 570 N.W.2d at 150.

### b.  Analysis

Here, there was sufficient evidence to find petitioner guilty of assaulting Dawna Beck with intent to kill.  Although petitioner denies being the perpetrator, he does not contend that the evidence was constitutionally insufficient to establish his identity as the shooter.  There was testimony from the other victim that petitioner was the shooter, and this testimony, if believed by the jury, was sufficient to show that petitioner assaulted Johnson and, by extension, Beck, by shooting at them.  Further, the fact that petitioner repeatedly fired shots at Johnson is sufficient evidence from which petitioner's intent to kill Johnson could be inferred.  As explained above it is well established that "[t]he specific intent to kill may be proven by inference from any facts in evidence." *Warren*, 161

F.3d at 361 (internal quotation omitted).  Specifically, and in addition to other factors, the Court "may take into consideration 'the nature of the defendant's acts constituting the assault . . . [and] whether the instrument and means used were naturally adapted to produce death[].'" *Id.* (quoting *People v. Taylor*, 422 Mich. 554, 375 N.W.2d 1, 8 (1985)).  Thus, even in the absence of any evidence that he expressed an intent to kill or succeeded in killing Johnson, petitioner's act of firing a gun at Johnson multiple times and at close range is sufficient evidence from which the finder of fact could infer beyond a reasonable doubt that petitioner intended to kill the victim.  *See Johnigan v. Elo*, 207 F. Supp. 2d 599, 608 (E.D. Mich. 2002) (Steeh, J.); *People v. Ritsema*, 105 Mich. App. 602, 609, 307 N.W.2d 380, 383 (1981);  *People v. Johnson*, 54 Mich. App. 303, 304, 220 N.W.2d 705, 706 (1974).

Even though there was no evidence that petitioner intended to kill Dawna Beck, the intent element was satisfied with respect to this conviction under the transferred intent doctrine.  "The principle of 'transferred intent' makes an actor criminally responsible for the results of his conduct, even thought the person injured is not his intended victim."  *State ex rel S.B.*, 755 A.2d 596, 599 (N.J. Super. Ct. App. Div. 2000); *accord* 1 LAFAVE & SCOTT, SUBSTANTIVE CRIMINAL LAW § 6.4(d) (2d ed.).  Michigan courts apply the common law doctrine of transferred intent.  *See People v. Lawton*, 196 Mich. App. 341, 350-51, 492 N.W.2d 810, 815 (1992); *People v. Youngblood*, 165 Mich. App. 381, 388, 418 N.W.2d 472, 475 (1988).  As explained by the Michigan Court of Appeals in a case involving a charge of assault with intent to commit great bodily harm, "[b]efore defendant can be convicted it must first be shown that he had the intention to cause great bodily harm to someone.  Merely because he shot the wrong person makes his crime no less heinous.  It is only necessary that the state of mind exist, not that it be directed at a particular person." *People v. Lovett*,

90 Mich. App. 169, 172, 283 N.W.2d 357, 359 (1979). Here, the evidence was sufficient to show that petitioner intended to kill someone–*i.e.*, Johnson–and thus under the transferred intent doctrine the evidence was sufficient to establish that petitioner assaulted Beck with the intent to kill. Accordingly, the Court should conclude that petitioner is not entitled to relief on this claim.

2.   *Double Jeopardy*

Petitioner argues that his single intent to kill Johnson could not be used to support both his conviction of assaulting Johnson with intent to kill and his conviction for assaulting Beck with intent to kill. As explained above, this argument does not call into question the sufficiency of the evidence supporting petitioner's conviction with respect to the Beck assault, and thus if petitioner's argument is correct it is because using his single intent to establish the intent element of both assault convictions violates the Double Jeopardy Clause. The Court should reject this argument.

*a. Clearly Established Law*

The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted). "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

21

As noted above, the Double Jeopardy Clause prohibits a state from punishing a defendant twice for the same "offense." However, "[f]or constitutional purposes, it makes no difference that the separate charges against [petitioner] grew out of the same transaction." *Smith v. Sowders*, 848 F.2d 735, 739 (6th Cir. 1988). "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) (citations omitted). Thus, the question is whether the Michigan Legislature intended that the assault of two separate victims even though accompanied by only a single intent to harm one of the victims gives rise to separate criminal liability; if so, the "court's inquiry is at an end" and there is no double jeopardy violation. *Id.* at 499 n.8. In making this determination, the Court is bound by the Michigan courts' interpretation of state law. *See Rodgers v. Bock*, 49 Fed. Appx. 596, 597 (6th Cir. 2002); *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

*b. Analysis*

After applying this standard, the Court should conclude that petitioner cannot establish a double jeopardy violation from his multiple convictions arising from a single intent to kill Johnson. At the outset, there is nothing remarkable about such a construction of the assault statute. Petitioner, in essence, contends that his single intent is a discrete element which can be used only once to support a single conviction. Nothing in Michigan statutory law or the Double Jeopardy Clause requires such a conclusion. Rather, as the Connecticut Supreme Court has explained, "[a]lthough th[e] traditional formulation of the [transferred intent] doctrine requires that the intent be transferred, such intent is not regarded as a limited commodity that, once satisfied, is totally expended." *State v. Hinton*, 630 A.2d 593, 596 n.2 (Conn. 1993). As the court went on to note, "[h]uman beings are

22

not fungible.  Therefore, a separate injury to each constitutes a separate crime, and the law does not give the defendant a discount on the second and subsequent victims of his intentional conduct." *Id.* at 598.  Courts from other jurisdictions have reached the same conclusion, finding no constitutional or statutory problem with multiple convictions arising from a single intent.  *See State v. Henley*, 687 P.2d 1220, 1222 (Ariz. 1984) ("When the act of firing one bullet results in two persons being injured, the person firing the bullet is responsible for two separate and distinct injuries and therefore has committed two assaults.  This is so even though he has only committed one act and may only have had one 'original' intent."); *Commonwealth v. Melton*, 763 N.E.2d 1092, 1097-98 (Mass. 2002) (citing cases); *State v. Worlock*, 569 A.2d 1314, 1325 (N.J. 1990); *State v. Christian*, 526 S.E.2d 568, 572 (N.C. Ct. App. 2002).

More importantly, the Michigan Court of Appeals has directly answered this question.  In *Lovett*, *supra*, the defendant was convicted (pursuant to his plea) of two counts of assault with intent to commit great bodily harm.  The defendant shot at one victim intending to harm him, but struck an unintended victim who was standing across the street.  *See Lovett*, 90 Mich. App. at 171, 283 N.W.2d at 358.  After concluding that the defendant could properly be convicted of assault with intent to commit great bodily harm with respect to the unintended victim, *see id.* at 171-72, 283 N.W.2d at 358-59, the court of appeals considered the defendant's argument that he could not "be convicted of two counts of assault since he only did a single act with specific intent to injure one person." *Id.* at 172, 283 N.W.2d at 359.  The court rejected this argument, reasoning that "a person, by a single act, can violate more than one criminal statute and thus be found guilty of multiple offenses." *Id.* at 174, 283 N.W.2d at 359.  The court continued that "[w]here crimes against persons are involved we believe a separate interest of society has been invaded with each victim and that,

23

therefore, where two persons are assaulted, there are two separate offenses." *Id*., 283 N.W.2d at 360. The court concluded that "the result is not altered" even though "the doctrine of transferred intent is involved in this case." *Id*.

In short, the Michigan Court of Appeals has interpreted state law as authorizing multiple criminal punishment for separate assaults accompanied by an intent to harm only a single victim where the doctrine of transferred intent supplies the necessary mental state element for the unintended assault. Because this Court is bound by the Michigan courts' interpretation of state law in deciding the double jeopardy issue, *see Rodgers*, 49 Fed. Appx. at 597; *Banner*, 886 F.2d at 780, the "court's inquiry is at an end" and there is no double jeopardy violation. *Johnson*, 467 U.S. at 499 n.8. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.     *Counsel Claims (Claims II-III & VII-IX)*

Petitioner next raises several challenges to his counsel in the state court proceedings. In his seventh claim, petitioner contends that the state court improperly denied his request for substitute counsel. In his second, third, and eighth claims, he contends that his trial counsel was constitutionally ineffective in a number of respects. Finally, in his ninth claim, he contends that his appellate counsel was constitutionally ineffective.

1.     *Substitute Counsel (Claim VII)*

Petitioner first contends that he was denied his Sixth Amendment right to counsel when the trial court denied his request for substitute counsel. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

*a. Clearly Established Law*

24

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. This right contemplates a corollary right to the counsel of one's choice, and thus a criminal defendant who has the desire and the financial means to retain his own counsel generally "'should be afforded a fair opportunity to secure counsel of his choice.'" *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1351 (6th Cir. 1993) (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). However, "[a]lthough the Sixth Amendment contemplates a right to counsel of choice, that right is generally cognizable only to the extent defendant can retain counsel with private funds; an indigent defendant does not have an absolute right to choose appointed counsel." *Haynie v. Furlong*, No. 98-1177, 1999 WL 80144, at *1 (10th Cir. Feb. 17, 1999). As the Supreme Court has recently explained, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). Further, the right to counsel of one's choice is not absolute, and "is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Importantly, the right to counsel of one's choice "must be balanced against the court's authority to control its own docket, and a court must beware that a demand for counsel may be utilized as a way to delay proceedings or trifle with the court." *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988); *see also*, *Lockett v. Arn*, 740 F.2d 407, 413 (6th Cir. 1984) ("Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of that right must be balanced against the court's authority to control its docket."). Further, as the Supreme Court has explained, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than

25

to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. Thus, "in evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.'" *Id*. (quoting *United States v. Cronic*, 466 U.S. 648, 657 n.21 (1984). Because an indigent defendant has no absolute right to appointed counsel of his choice, and because the focus of the Sixth Amendment inquiry is on effective advocacy, "[a] criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991); *accord United States v. Blaze*, 143 F.3d 585, 593 (10th Cir. 1998); *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990).

### b. Analysis

Prior to trial, petitioner sought substitution of counsel because, in his view, counsel had failed to file any pretrial motions and had failed to contact his alibi witnesses. The trial court denied petitioner's request for substitute counsel because petitioner had failed to establish good cause to warrant the substitution of counsel. This determination was reasonable. Petitioner failed to establish good cause for substitution of counsel, "such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Smith*, 923 F.2d at 1320. Petitioner does not allege that there was any irreconcilable conflict between himself and counsel, or that counsel was acting with a conflict of interest. While petitioner does contend that there was a breakdown in communication, he does not allege the type of complete breakdown for which substitute counsel is warranted. Rather, petitioner contends only that counsel was unprepared and had not presented various motions which he thought should be brought. This is insufficient to

26

constitute the type of complete breakdown justifying appointment of substitute counsel. *See United States v. Carillo*, 161 Fed. Appx. 790, 793 (10th Cir. 2006); *cf. Morris v. Slappy*, 461 U.S. 1, 13-14 (1983) (there is no constitutional right to a "meaningful attorney-client relationship."). It is apparent from the record that petitioner's problems with counsel focused on differences in trial strategy. These differences provided no basis for a substitution of counsel at such a late stage in the proceedings. *See United States v. Romero*, 27 Fed. Appx. 806, 807-08 (9th Cir. 2001); *United States v. Castro*, 908 F.2d 85, 88-89 (6th Cir. 1990); *Matsushita v. United States*, 842 F. Supp. 762, 763-64 (S.D.N.Y. 1994).

Further, even assuming that the trial court erred by not granting petitioner's request for substitute counsel, petitioner's claim fails because any error was harmless. As noted above, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably by represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. Thus, the courts that have considered the issue have concluded that "[u]nless [a defendant] can establish an ineffective assistance claim under *Strickland v. Washington* . . . any error in the [trial] court's disposition of [the defendant's] motion for appointment of substitute counsel is harmless." *United States v. Graham*, 91 F.3d 213, 217 (D.C. Cir. 1996) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)); *see also*, *United States v. Calderon*, 127 F.2d 1314, 1343 (11th Cir. 1997); *United States v. Zillges*, 978 F.2d 369, 372-73 (7th Cir. 1992); *Bowie v. Renico*, No. 00-10013, 2002 WL 31749162, at *11 (E.D. Mich. Nov. 6, 2002) (Lawson, J.); *Stephens v. Costello*, 55 F. Supp. 2d 163, 172 (W.D.N.Y. 1999). As the Supreme Court has explained, "those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin*

27

*& Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989).  Because, as explained below, petitioner was not deprived of the effective assistance of counsel, he has "no cognizable complaint."

This conclusion is not altered by the Supreme Court's decision in *United States v. Gonzalez-Lopez*, *supra*.   In that case, the Court held that a defendant who has been denied his Sixth Amendment right to counsel of his choice need not demonstrate that his actual trial attorney was defective, or that he was prejudiced by counsel's deficient performance.  *See Gonzalez-Lopez*, 548 U.S. at 146.  Further, the Court held that a denial of the right to counsel of one's choice is a structural error, and thus harmless error review does not apply to such a denial.  *See id*. at 150-51. *Gonzalez-Lopez* is inapplicable here.  That case involved a defendant who had retained counsel to represent him but was denied the right to have his retained counsel appear on his behalf.  Nothing in that decision purported to alter the rules applicable to an indigent defendant's right to appointed counsel of his choice.  On the contrary, the Court explicitly reaffirmed the *Wheat* and *Caplin & Drysdale* conclusions that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  *Id*. at 151 (citing *Caplin & Drysdale*, 491 U.S. at 624; *Wheat*, 486 U.S. at 159).  Thus, *Gonzales-Lopez* does not call into question the Court's prior observation that "those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts."  *Caplin & Drysdale*, 491 U.S. at 624; *see Garcia v. Quarterman*, No. H-06-0504, 2006 WL 2413714, at *14 (S.D. Tex. Aug. 18, 2006) (habeas relief not warranted based on failure to substitute appointed counsel where appointed counsel was not ineffective, notwithstanding *Gonzalez-Lopez*).

2.    *Ineffective Assistance of Trial Counsel (Claims II-III & VIII)*

Petitioner next raises several claims that his trial counsel provided constitutionally deficient

28

assistance at trial.  Specifically, petitioner contends that counsel was ineffective for failing to: (1) call alibi witnesses; (2) call other non-alibi witnesses; (3) object to other acts evidence; and (4) object to prosecutorial misconduct.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

### a. Clearly Established Law

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.*  at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.  With respect to the prejudice prong, the

29

reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

### b. Failure to Call Witnesses

Petitioner first contends that counsel was ineffective for failing to call various alibi and non-alibi witnesses. Generally, "[c]omplaints of uncalled witnesses are not favored in federal habeas review." *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985); *Aponte v. Scully*, 740 F. Supp. 153, 158 (E.D.N.Y. 1990). As one court has explained:

> The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial. [Defendant] does not identify any witnesses that his counsel should have called who would have been helpful. Defense counsel's conduct in this regard appears to fall within the wide range of reasonable professional representation. Decisions whether to engage in cross examination, and if so to what extent and in what manner, are similarly strategic in nature.

*United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *accord Reese v. Fulcomer*, 946 F.2d 247, 257 (3d Cir. 1991) (counsel's performance not deficient where counsel did not call alibi witness whose testimony could have been damaging); *United States v. Porter*, 924 F.2d 395, 397 (1st Cir. 1991) (decision not to call witnesses who could have incriminated defendant within scope of informed professional judgment). Further, it is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5

30

(N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008).

With respect to counsel's failure to call the alibi witnesses, petitioner cannot show that he was prejudiced by counsel's failure to present these witnesses at trial. Both Patricia Anderson's trial testimony and her affidavit attached to petitioner's *pro per* supplemental brief in the Michigan Court of Appeals make clear that the alibi witnesses present at the funeral in Florida were unwilling to travel to Michigan to testify on petitioner's behalf unless they were reimbursed for their travel expenses. Even assuming that counsel should have sought, and would have obtained, funds to pay for these witnesses' travel expenses, there is not a reasonable probability that the result of the proceeding would have been different. Here, counsel was able to present a "plausible, if ultimately unsuccessful, alibi defense" through the testimony of other alibi witnesses. *See Hess v. Mazurkiewicz,* 135 F. 3d 905, 909 (3d Cir. 1998). It is true that an alibi witness who would give testimony similar to another alibi witness is not necessary cumulative. Because of the nature of the defense, cumulative alibi witnesses may nonetheless provide additional support for a defense which could alter the result of the trial. Thus, for example, an alibi witness who testifies is generally not cumulative to the defendant's own testimony even if the testimony is the same, nor is a disinterested alibi witness cumulative to an interested alibi witness such as a defendant's relative. *See, e.g*, *Rosario v. Ercole*, 582 F. Supp. 2d 541, 578-79 (S.D.N.Y. 2008) (citing cases). Here, however, petitioner does not point to any disinterested alibi witnesses who could have testified in addition to his sister and cousin. Rather, he points only to additional family members who could have testified consistent with the testimony of Patricia Anderson and Osborn. Because these additional witnesses were close family members of petitioner's with a strong motive to fabricate an alibi defense on

31

petitioner's behalf, their "testimony would not have been particularly compelling and would have been subjected to vigorous impeachment." *Ball v. United States,* 271 Fed. Appx. 880, 884 (11th Cir. 2008); *see also*, *United States ex. rel. Emerson v. Gramley,* 883 F. Supp. 225, 236-37 (N.D. Ill. 1995)(counsel not ineffective in failing to call petitioner's mother and ex-wife as alibi witnesses, because they were "patently interested witnesses" who would have added little value to the case). It is unlikely that the jury's assessment of the evidence would have changed had counsel presented testimony from additional family members which did not provide any information that the jury had not already heard from Patricia Anderson and Osborn.  Petitioner thus cannot establish that he was prejudiced by the absence of these witnesses, and the Court should therefore conclude that he is not entitled to habeas relief on this claim.

Petitioner also contends that counsel was ineffective for failing to call Carl Farmer as a witness.  However, petitioner has provided nothing to suggest that Farmer could have provided any useful information that would have aided the defense.  Farmer was present in the vicinity of the shooting but there is no reason to believe that he actually saw the shooting, rather than just hearing the shots and calling 911, as Hood testified.  Thus, petitioner has failed to identify any material exculpatory information Farmer could have provided.

Petitioner next contends that trial counsel was ineffective for failing to seek a continuance to secure the testimony of Latoya Brand.  Brand was listed as a witness on petitioner's witness list and, according to petitioner, would have testified that Johnson had told her that petitioner was not in fact that one who had shot him.  At the sentencing hearing, Brand addressed the Court, indicating that she had been on bed rest at the time of the trial due to a high-risk pregnancy.  *See* Sentence Tr., at 28.  Petitioner cannot show that he was prejudiced by counsel's failure to request a continuance,

for two reasons.  First, there is little reason to believe that the court would have granted an indefinite continuance had one been requested at the time of trial.  Second, even had Brand testified, there is not a reasonable probability that the result of the proceeding would have been different.  It is true that Brand's testimony would have provided evidence not before the court, namely, that Johnson had told her that petitioner was not the one who shot him.  However, like petitioner's missing alibi witnesses, Brand was far from disinterested.  The testimony showed that she and petitioner had been romantically involved,[2] and thus it is reasonably probable that the jury would have rejected her testimony just as it rejected the testimony of petitioner's interested alibi witnesses.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his missing witness claims.

### c.  Failure to Object

Petitioner also contends that counsel was ineffective for failing to object to the prosecutor's improper statements and the introduction of other acts evidence.  As explained above, however, the Michigan Court of Appeals determined that the other acts evidence was properly admitted as a matter of state law.  *See Anderson*, 2005 WL 1048500, at \*3-\*4, slip op. at 4-5.  In analyzing petitioner's ineffective assistance of counsel claim, this expression of state law is binding on this Court.  *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999).  *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action.").  Likewise, as explained above the prosecutor's questions and comments were not improper.  Thus,

---

[2]Although not established by the record, the record suggests that Brand may have been pregnant with petitioner's baby at the time of trial.  Brand had given birth sometime between the trial and the sentencing hearing, and at that hearing petitioner indicated that he had a newborn baby, who had been born on October 13.  *See* Sentence Tr., at 13.

any objection by counsel to the prosecutor's comments or the other acts evidence would have been futile.  Counsel cannot be deemed ineffective for failing to raise a meritless objection.  *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

   3.   *Ineffective Assistance of Appellate Counsel (Claim IX)*

   Finally, petitioner contends that his appellate counsel was ineffective for failing to raise his habeas claims on direct appeal and for failing to assist him in presenting his *pro per* supplemental brief on appeal.  Before proceeding to the merits of petitioner's appellate counsel claims, I note that he is required to demonstrate that he was prejudiced by counsel's failures notwithstanding his assertion that, between the time counsel filed his appellate brief and the time the Michigan Court of Appeals issued its decision, his counsel was suspended from the practice of law.

   It is true that the "actual or constructive denial of [appellate] counsel altogether is legally presumed to result in prejudice."  *Penson v. Ohio*, 488 U.S. 75, 88-89 (1988).  The Supreme Court, however, has repeatedly characterized this rule as requiring the complete denial of counsel on appeal.  Thus, in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Court characterized *Penson* has holding that the "*complete* denial of counsel on appeal requires a presumption of prejudice."  *Id*. at 483 (discussing *Penson*, 488 U.S. at 88-89) (emphasis added).  The Court characterized *Penson* similarly in *Smith v. Robbins*, 528 U.S. 259, 286 (2000).  As the Court further explained in *Flores-Ortega*, "[i]n *Cronic*, *Penson*, and *Robbins*, we held that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice because 'the adversary process itself' has been rendered 'presumptively unreliable.'"  *Flores-Ortega*, 528 U.S. at 483

34

(quoting *Cronic*, 466 U.S. at 659); *see also*, *id*. at 484 (following "the pattern established in *Strickland* and *Cronic*, and reaffirmed in *Robbins*, requiring a showing of actual prejudice . . . when the proceeding in question was presumptively reliable, but presuming prejudice . . . when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent."). Thus, as explained by the Seventh Circuit, "a presumption of prejudice has arisen when the defendant was hampered by 'the *complete* denial of counsel,' meaning that 'the defendant *never* received the benefit of a lawyer's services in constructing potential appellate arguments.'" *Kitchen v. United States*, 227 U.S. 1014, 1021 (7th Cir. 2000) (quoting *Flores-Ortega*, 528 U.S. at 483, and *Castellanos v. United States*, 26 F.3d 717, 718 (7th Cir. 1994)) (emphasis in original).

Here, unlike in *Penson*, petitioner was neither completely denied counsel on appeal nor deprived of the benefit of a lawyer's services in constructing appellate argument such that the appellate proceeding was presumptively unreliable. On the contrary, petitioner's appellate counsel filed a notice of appeal and an appellate brief raising two substantial claims. The fact that petitioner may have been constructively without counsel at the time the court of appeals issued its decision does not render the proceeding unreliable; at that point, appellate counsel had reviewed petitioner's case, identified appellate claims, and filed a brief, and the issues were fully formed and briefed. Thus, *Penson* is sufficiently distinguishable from petitioner's case that it does not apply here.

This conclusion is buttressed by two additional lines of authority. First, in recent years the Supreme Court has repeatedly emphasized that the bulk of ineffective assistance of counsel claims are governed by *Strickland*, and that the presumed prejudice standard is applicable only in very narrowly circumscribed and previously defined situations. *See Bell v. Cone*, 535 U.S. 685, 695-98 (2002); *Mickens v. Taylor*, 535 U.S. 162, 166-76 (2002); *Roe v. Flores-Ortega*, 528 U.S. 470, 481-

86 (2000); *Smith v. Robbins*, 528 U.S. 259, 284-89 (2000). These cases demonstrate that the Court has taken an extremely narrow view on the applicability of the presumed prejudice standard. *See Ouber v. Guarino*, 293 F.3d 19, 32-33 (1st Cir. 2002). This narrow view is difficult to harmonize with a reading of *Penson* which would obviate the need for petitioner to establish prejudice here. Second, in *Anders v. California*, 386 U.S. 738 (1967), the Court held that appellate counsel may withdraw based on his conclusion that an appeal would be wholly frivolous, so long as counsel: (1) advises the appellate court that an appeal would be frivolous; (2) requests permission to withdraw; and (3) files "a brief referring to anything in the record that might arguably support the appeal." *Id*. at 744. If, in such a case, a defendant can be denied the assistance of counsel in filing any brief without violating the defendant's right to counsel on appeal, it is difficult to see how petitioner's right to counsel on appeal was violated where counsel actually filed a brief on the merits. And, indeed, in *Robbins* the Court held that where counsel files a motion consistent with the requirements in *Anders*, the defendant must show prejudice to establish an ineffective assistance of counsel claim. *See Robbins*, 528 U.S. at 286-87.

Thus, to succeed on his ineffective assistance of appellate counsel claim, petitioner must demonstrate that he was prejudiced by counsel's failure to file the appellate issues petitioner raised in his *pro per* supplemental brief or in his motion for relief from judgment. In the appellate counsel context, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained above, petitioner's underlying claims are without merit, and thus petitioner cannot show that counsel was ineffective for failing to raise them on direct appeal.

36

Nor can petitioner show that counsel was ineffective for failing to assist him in filing his *pro per* supplemental brief. Even if state law required such assistance, nothing in the Constitution does so. "Because representation by counsel and self-representation are mutually exclusive entitlements, the assertion of one right constitutes a *de facto* waiver of the other." *United States v. Traeger*, 289 F.3d 461, 475 (7th Cir. 2002). Thus, there is no constitutional right to "hybrid" representation, where a defendant is both represented by counsel and acts as his own attorney. *See Wilson v. Hurt*, 29 Fed. Appx. 324, 327 (6th Cir. 2002); *United States v. Olano*, 62 F.3d 1180, 1193 (9th Cir. 1995). For this reason, "[a]bsent invocation of his right to represent himself without the assistance of counsel," a petitioner is "not entitled to have his *pro se* motions entertained by the court alongside those of counsel." *Delgado v. Duncan*, No. 02-CV-4929, 2003 WL 23185682, at *5 (E.D.N.Y. Nov. 4, 2003); *see also*, *Abdullah v. United States*, 240 F.3d 683, 686 (8th Cir. 2001); *United States v. Bergman*, 813 F.2d 1027, 1030 (9th Cir. 1987); *United States v. Gallardo*, 915 F. Supp. 216, 217 (D. Nev. 1995), *aff'd*, 92 F.3d 1194 (9th Cir. 1996); *Hall v. Dorsey*, 534 F. Supp. 507, 509 (E.D. Pa. 1982). The same rule holds true for *pro se* appellate filings. *See Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir. 1995) (a criminal defendant has no constitutional right to hybrid representation on appeal, and when defendant accepts assistance of counsel, but later objects to his attorney's appeal strategy or preparation of brief, defendant cannot then expect to be allowed to file supplemental *pro se* briefs on direct appeal). Thus, petitioner cannot establish a constitutional violation based on counsel's failure to assist him in filing a *pro se* supplemental brief on appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

I.      *Cumulative Error (Claim XI)*

Finally, petitioner contends that he was denied a fair trial by the cumulative effect of the errors at her trial. The Court should conclude that petitioner is not entitled to habeas relief on this basis. It is true that "[e]rrors which standing alone may be deemed harmless or insufficiently prejudicial to amount to a denial of due process may cumulatively produce a trial setting which is fundamentally unfair." *Payne v. Janasz*, 711 F.2d 1305, 1316 (6th Cir. 1983) (Jones, J., dissenting); *accord Walker v. Engle*, 703 F.2d 959, 968 (6th Cir. 1983). This rule, however, applies only to constitutional errors; the accumulation of non-errors cannot collectively amount to a violation of due process. *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); *United States v. Lumpkin*, 192 F.3d 280, 290 (2d Cir. 1999); *McKinnon v. Ohio*, No. 94-4256, 1995 WL 570918, at *12 (6th Cir. Sept. 27, 1995); *Fero v. Kerby*, 39 F.3d 1462, 1475 (10th Cir. 1994). As noted and discussed in this Report, none of petitioner's claims establish constitutional error, and thus his cumulative error claim fails.

J.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of*

*Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 9/28/09

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on September 28, 2009.

s/Eddrey Butts
Case Manager

39